## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| Matheson Tri-Gas, Inc. | : | |
| Plaintiff, | : | |
| | : | Court No. 26-03487 |
| v. | : | |
| U.S. CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES, | : | |
| UNITED STATES, | : | |
| Defendants. | : | |

## COMPLAINT

1.    Plaintiff, Matheson Tri-Gas, Inc. ("Plaintiff" or "Macco") is an importer, as defined in 19 C.F.R. 101.1, of merchandise into the U.S. subject to the challenged duties at issue in this matter.

2.    Beginning in February of 2025, through a series of executive orders, the President invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources their imports.  Plaintiff is responsible for paying these tariffs on the imported goods.

3.    On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources Inc. v.*

1

*Trump*, 607 U.S. \_\_\_\_ (2026), No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4.     The Supreme Court has also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id.* at 5.  Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5.     Accordingly, for the reasons set out in *Learning Resources*, Plaintiff seeks for itself a full refund from Defendants of all IEEPA duties Plaintiff has paid to the United States.

## PARTIES

6.     Plaintiff is a U.S. company located in Irving, Texas.

7.     Defendant United States Customs and Border Protection ("CBP") is a component agency  of the U.S. Department of Homeland Security headquartered in Washington, D.C.  CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

8.     Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

9.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

10.    Defendants are referred to collectively in this complaint as "CBP."

## JURISDICTION

11.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, slip op. at 5, n.1.

2

12.     This Court had the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585.  In a civil action under 28 U.S.C. § 1581, the Court can order any other appropriate civil relief, 28 U.S.C. §§ 2643(a)(1), (c)(1).

13.     Plaintiff has standing to bring this lawsuit because it is an importer of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP that have been held by the Supreme Court to be unlawful.  As a result of the executive orders identified in this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders.  The relief Plaintiffs seek from this Court is the sole relief that would redress those injuries.

## BACKGROUND AND PLEADINGS

14.     On February 1, 2025, the President issued three execute orders imposing tariffs on imports from Canada, Mexico, and China.  Each executive order was premised on IEEPA authorizing the tariffs.

15.     The executive order directed at Mexico, Executive Order 14194, Fed. Reg. 9,117 (Feb. 7, 2025), *Imposing Duties To Address the Situation of Our Southern Border*, imposed an additional 25% tariff on import of goods from Mexico, with certain exceptions.

16.     The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

17.     Finally, the executive order directed at China, Executive Order 14193, 90 Fed. Reg. 9,121 (Feb. 1, 2025), *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

18.     Four days later, on February 5, 2025, the president issued another order, Executive Order 14,200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

19.     The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment").  The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

20.     On April 2, 2025, citing trade deficits with our trading partners as a national emergency, the President issue Executive Order 14,257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025)("Reciprocal Tariff Order").  The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports into the United States, effective April 5, 2025, and additional "reciprocal" tariffs on fifty-seven countries, effective April 9, 2025. *Id.* at Annex I.  These higher country-specific tariffs range from 11% to 50%. *Id*.

21.     On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by fifty percentage points – from 34% to 84%.  Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

22.     The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again – from 84% to 125%.  Exec. Order No 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading*

4

*Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025).  Meanwhile, the 20% tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

23.    Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs be entered under new tariff codes.

24.    On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders.  *See V.O.S. Selections, et al. v. Trump, et al.,* No. 25-cv-00066 (Dkt. 2).  This Court held the orders were unlawful and the Federal circuit, sitting *en banc*, affirmed.  It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Cour on February 20, 2026.

25.    In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying orders.

26.    CBP continued to collect duties imposed by the Challenge Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026."  Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 2026). Executive order 14389, 91 FR 9437 (March 25, 2026).

27.    By this complaint, Plaintiff seeks relief as a result of all duties it has paid or will pay to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders").

**CBP ASSESSMENT OF THE IEEPA TARIFFS**

28.    CBP is charged with the assessment and collection of duties, including the IEEPA duties.  *See* 19 U.S.C. §§ 1500, 1502.

29.    In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature, the HTSUS.  Pub. L. No. 100-418, 102 Stat. 1107 (1988).  CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings.  19 U.S.C. § 1202.  The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category.  *Id*.

30.    CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS.  ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

31.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders.  19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F.Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

32.    When goods enter the Unites States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

6

33. "Liquidation" means the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. 159.1.

34. Typically, when goods enter (*i.e.*, are imported into) the United States the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods.  *See*, 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect goods.

35. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final among of duty for the imported goods.  *See*, 19 U.S.C. § 1500.

36. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

37. Liquidation, unless extended, must happen within one year.  *See*, 19 U.S.C. § 1504(a).  Typically, CBP liquidates 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website.  *See*, 19 C.F.R. 159.9.  CBP can voluntarily reliquidate an entry within 90 days of liquidation.  *See* 19 U.S.C. § 1501.

38. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause.  *See*, 19 U.S.C. § 1504(b)(2); 19 C.F.R. 159.12(a)(1)(ii).

39. Once liquidation or voluntary reliquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties.  *See* 19 U.S.C. § 1514.  But not all liquidations are protestable; where CBP acts in a "ministerial" capacity (*i.e.*, without discretion) in imposing a duty, the

entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States,* 98 F.4th 1046, 1053 (Fed. Cir. 2024).

40.    In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS")*, a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiff's entries subject to IEEPA duties that were found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n. 4 (Ct. Int'l Trade May 23, 2025).

### SUPREME COURT REVIEW OF IEEPA TARIFFS

41.    On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Federal Circuit.

42.    The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

43.    Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties were unlawful. *See, V.O.S. Sections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

44.    In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inv., v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit heard arguments, the

8

United States Supreme Court granted certiorari in both the *V.O.S. Selections* and *Learning Resources* cases.

46. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 30.

46. As of the date of this complaint, Plaintiff paid IEEPA duties imposed by the Challenged Tariff Orders until collection ended on February 24, 2026.

47. The goods Plaintiff imported into the United States that were subject to IEEPA tariffs entered into the Unites States were entered under the new IEEPA tariff codes applicable to the source foreign countries, in addition to the underlying HTSUS codes in HTSUS Chapters 1 through 98.

48. Plaintiffs have paid IEEPA duties on numerous entries.

**COUNT I – PLAINTIFF ASSESS UNLAWFUL TARIFFS**

49. Plaintiffs incorporated the above paragraphs by reference.

50. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Donald Trump*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 *et seq.*, when he imposed these IEEPA tariffs on these imported goods.

51. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate … importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does

not." *Learning Resources*, slip op. at 16.  The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this court's ruling on the merits of the IEEPA tariffs. *Id*. at 21.

52.    The Challenged Tariff Orders purported to impose duties and modify the HTSUS solely under IEEPA.

53.    In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiff, including any post judgment interest that accrues."  Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)

54.    This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) Order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b) Order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c) Order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, with interest as provided by law;

d) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) Grant such further relief as this Court deems proper.

Dated: August 5, 2026        Respectfully submitted,

                    \_\_/s/ Robert J. Leo_____
                    Robert J. Leo
                    MEEKS, SHEPPARD, LEO & PILLSBURY LLP
                    570 Lexington Avenue, 24TH Floor
                    New York, NY 10022
                    (203) 257-6614
                    Attorneys for Plaintiff

CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that Plaintiff's Complaint in Matheson Tri-Gas, Inc. v. United States, Court No. 26-03487 dated August 5, 2026  was served on Defendant United States by ECF filing on August 5, 2026, and on August 5, 2026 by certified mail, return receipt requested to:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

/s/_Andrea Abraham_____